IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DANIELLE C. SMITH,          )
                            )
       Plaintiff,           )
                            )
    v.                      )       1:09CV951
                            )
BANK OF STANLY,             )
                            )
       Defendant.           )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned Magistrate Judge in connection with a hearing held pursuant to an Order directing Plaintiff and her counsel to show cause why the Court should not sanction each of them under Local Rule 83.4(a) for violating Local Rules 7.2(a)(2) and 26.1(b)(1). (See Docket Entry 47; Docket Entry dated July 14, 2011.) For the reasons that follow, the Court should require Plaintiff's counsel - but not Plaintiff - to pay Defendant $16,924.50 as a sanction for those violations.[1]

---

[1] The Fourth Circuit recently stated, albeit in an unpublished opinion, that a sanctions order "issued after the conclusion of the underlying case — was <u>not a nondispositive pretrial matter</u> under § 636(B)(1)(a), and the magistrate [judge] was permitted only to enter a Report and Recommendation subject to the district court's *de novo* review." Reddick v. White, 456 F. App'x 191, 193-94 (4th Cir. 2011) (emphasis added); see also 28 U.S.C. § 636(b)(1)(A) (indicating that magistrate judges may rule on nondispositive, pretrial matters). Under these circumstances, particularly given that the Court has dismissed this case (see Docket Entry 46), the undersigned Magistrate Judge will enter a Recommendation.

I.   BACKGROUND

Plaintiff's Complaint alleged discrimination based on sex and disability, as well as retaliation, under Title VII and the Americans with Disabilities Act. (Docket Entry 2 at 9-10.) The undersigned Magistrate Judge recommended that the Court grant summary judgment in favor of Defendant and order Plaintiff and her counsel to show cause why the Court should not sanction them for violating two provisions of the Court's Local Rules. (Docket Entry 28 at 79.) Specifically (as later established on the record at the show cause hearing), Plaintiff and her counsel violated

> Local Rule 7.2(a)(2) by including in her summary judgment response brief a statement of fact asserting that Defendant's "story of adulterous bathroom sex has been fabricated to try to justify further punishment calculated to eliminate its sole female Branch Manager/Vice President" (Docket Entry 26 at 13), without any citation to the record and in the absence of any apparent evidentiary basis[, and violated] Local Rule 26.1(b)(1) by behaving in an unduly argumentative and sarcastic manner during Plaintiff's deposition (Docket Entry 26-4 at 10; Docket Entry 26-8 at 7).

(Docket Entry 28 at 79-80; see also id. at 72-73 n.53 (detailing examples of misconduct).)

The Court (per Senior United States District Judge N. Carlton Tilley, Jr.) adopted that Recommendation and referred the action back to the undersigned Magistrate Judge to conduct the show cause hearing. (Docket Entry 46 at 3; see also Docket Entry 47 at 3-4 (ordering Plaintiff to show cause why she and/or her counsel should not face sanctions).) At the direction of the Court (Docket Entry

47 at 3-4), Plaintiff filed a Memorandum opposing sanctions (Docket Entry 51), Defendant responded (Docket Entry 52), and Plaintiff replied (Docket Entry 53).

In responding to Plaintiff's Memorandum opposing sanctions, Defendant proposed that payment of a portion of its expenses - totaling $49,818.59 - would serve as an appropriate sanction for the violations at issue. (Docket Entry 52 at 5; see also Docket Entries 52-3, 52-4 (affidavits supporting claimed expenses).) Subsequently, the undersigned Magistrate Judge conducted the show cause hearing. (Docket Entry dated July 14, 2011.)[2] At the conclusion of the proceeding, the undersigned Magistrate Judge determined, for reasons stated on the record, that Plaintiff's counsel should pay Defendant the reasonable expenses it incurred as a result of the deposition misconduct, but took under advisement the issue of whether the Court should similarly sanction Plaintiff. (See id.)[3] The undersigned Magistrate Judge also ordered the Parties to make supplemental filings addressing the appropriate

---

[2] The Clerk's Office maintains a recording of the proceeding documented by the Docket Entry dated July 14, 2011.

[3] As discussed on the record at the show cause hearing, the undersigned Magistrate Judge concludes that, in part due to the difficulty of isolating the additional expenses attributable to Plaintiff's counsel's unsupported statement of fact (in violation of Local Rule 7.2(a)(2)), the Court should order payment of a portion of Defendant's expenses incurred in connection with Plaintiff's counsel's deposition misconduct (in violation of Local Rule 26.1(b)(1)) as a sanction for both violations.

-3-

amount of expenses Plaintiff's counsel should pay as a sanction. (See id.)

In that regard, Defendant submitted a Supplemental Affidavit (Docket Entry 57), including billing records detailing expenses in the reduced amount of $23,163.09 (Docket Entry 57-1 at 3). Plaintiff responded, contesting Defendant's claimed expenses and, further, asserting several objections to the imposition of sanctions, some of which she had raised at the show cause hearing. (Docket Entry 58 at 1-8.) Defendant did not reply. (See Docket Entries dated July 22, 2011, to present.)

## II.   DISCUSSION

A.   Expense-Shifting as a Sanction for Misconduct

Under this Court's Local Rules, the Court may issue as a sanction "an order imposing costs, including attorney's fees, against the party, or the party's attorney, who has failed to comply with a [L]ocal [R]ule." M.D.N.C. R. 83.4(a)(4). At the hearing, and in her subsequent filing, Plaintiff argued that the Supreme Court's decision in Fox v. Vice, 131 S. Ct. 2205 (2011), counseled against expense-shifting in this case. (See Docket Entry dated July 14, 2011; Docket Entry 58 at 6-7.) In that regard, Plaintiff contends that "[t]he Supreme Court recognized that in certain civil rights cases, such as the one before it, federal statutes allow the shifting of fees and expenses, contrary to the normal 'American Rule' . . . . Even in those circumstances, the

Court said such shifting of fees should only occur in extreme situations, such as where a plaintiff's action is found to be 'frivolous' . . . ." (Docket Entry 58 at 6-7.)

Plaintiff's argument and reliance on Fox erroneously conflates expense-shifting under civil rights statutes, designed to compensate a plaintiff who "serves as a private attorney general, vindicating a policy that Congress considered of the highest priority . . . [and to] reimburse a plaintiff for what it cost him to vindicate civil rights," Fox, 131 S. Ct. at 2213 (internal quotation marks and alterations omitted), with expense-shifting as a sanction for misconduct by litigants, designed to "curb abuses," Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 553 (1991). Moreover, unlike expense-shifting under civil rights statutes, "sanctions [for misconduct do not] shift the entire cost of litigation; they shift only the cost of a discrete event," id. "Indeed, there are ample grounds for recognizing that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel even though the so-called 'American Rule' prohibits fee shifting in most cases." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (internal citations, quotation marks, and alterations omitted). One of those defined circumstances occurs "when a party shows bad faith by delaying or disrupting the litigation . . . ." Id. at 46.

Because the facts of this case (established at the show cause hearing) fit within the expense-shifting rubric contemplated by <u>Business Guides</u> and <u>Chambers</u>, <u>Fox</u>'s discussion of the "American Rule" does not void the prior conclusion that the conduct of Plaintiff's counsel warrants imposition of a sanction requiring payment of a portion of Defendant's expenses.

B.  Sanctions against Plaintiff

This Court's Local Rules provide that, "[i]f an attorney or a party fails to comply with a [L]ocal [R]ule of this [C]ourt, the [C]ourt may impose sanctions <u>against the attorney or party, or both</u>." M.D.N.C. R. 83.4(a) (emphasis added). Generally, federal courts have deemed clients fully accountable for the conduct of their attorneys, based on agency law. In that regard, the Circuit Courts of Appeals, including the Fourth Circuit, have considered the client as the principal and the attorney as the client's agent; thus, the attorney's acts bind the client. See, e.g., <u>Robinson v. Wix Filtration Corp., LLC</u>, 599 F.3d 403, 409 (4th Cir. 2010) ("As both the Supreme Court and our circuit have consistently recognized, a party voluntarily chooses his attorney as his representative in the action, and, thus, he cannot later 'avoid the consequences of the acts or omissions of this freely selected agent.'" (quoting <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 633-34 (1962))); <u>Gripe v. City of Enid</u>, 312 F.3d 1184, 1189 (10th Cir. 2002) ("Those who act through agents are customarily bound by their

agents' mistakes.  It is no different when the agent is an attorney."). Under this formulation of the attorney-client relationship, a "district court[] [has the] discretion to impose . . . sanctions [against the client] without a finding that [the client] acted in bad faith or was herself guilty of willful misconduct." Everyday Learning Corp. v. Larson, 242 F.3d 815, 817 (8th Cir. 2001).

However, a number of Circuit Courts of Appeals appear to have softened that position, finding it unfair to sanction a client who did not influence or participate in the attorney's misconduct. See Kasalo v. Harris & Harris, Ltd., 656 F.3d 557, 561 (7th Cir. 2011) (reversing district court's dismissal for want of prosecution where "all of the errors appear[ed] to be the fault of [the plaintiff's counsel] and none seems to have anything to do with [the plaintiff's] complaint against [the defendant]"); Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 397-99 (6th Cir. 2009) (affirming district court's decision to impose Rule 11 sanction against attorney individually where client did not cause his counsel to include unsupported and false factual allegation in amended complaint and memorandum opposing summary judgment); Tenkku v. Normandy Bank, 348 F.3d 737, 743-44 (8th Cir. 2003) (modifying district court's sanctions order where client had no role in her counsel's violation of Rule 11 and vexatious multiplication of proceedings, such that entire sanction fell on counsel); Shepherd

v. American Broad. Cos., Inc., 62 F.3d 1469, 1484 (D.C. Cir. 1995) ("Like other courts, we disfavor sanctioning a party for counsel's misconduct unless the party itself is somehow implicated.").

The Fourth Circuit has not directly articulated the standard district courts should employ when considering a sanction against a client for attorney misconduct. In one case, the Fourth Circuit affirmed the district court's decision not to sanction the plaintiffs (in addition to their counsel) for Rule 11 violations, because "[t]he record reveal[ed] that, on advice of their lawyers, they instituted the action [and,] [t]hereafter, they [were] shown to have participated in no significant, active way, leaving to the advice of counsel all decisions." Bakker v. Grutman, 942 F.2d 236, 242 (4th Cir. 1991). Similarly, the Fourth Circuit recently noted, in determining that a district court intended to sanction an attorney (but not his client) for misbehavior during a deposition when the district court used the term "[p]laintiffs," that "the [district] court focused entirely on the conduct of [the attorney] without suggesting any complicity or fault on the part of his clients." Sartin v. McNair Law Firm, PA, 756 F.3d 259, 266 (4th Cir. 2014). The Fourth Circuit further added that "the conduct that drew the [district] court's ire — [the attorney's] handling of discovery — was not the type of conduct in which [the attorney's] clients would typically participate." Id. at 266-67.

Conversely, in another recent case, the Fourth Circuit, citing agency-law principles, affirmed - by a divided panel - a district court's entry of summary judgment (and its denial of post-judgment relief) against a plaintiff whose attorney failed to file a response in opposition to summary judgment. Robinson, 599 F.3d at 408-11. In contrast, the dissenting judge in that case cited that court's "longstanding recognition that 'the sanctions for attorney neglect should be borne if at all possible by the attorney himself rather than by his client.'" Id. at 421 (King, J., dissenting) (citing Dove v. CODESCO, 569 F.2d 807, 810 (4th Cir. 1978)).

Given the foregoing guidance from the Fourth Circuit, this Court has the discretion to sanction Plaintiff for her attorney's misconduct pursuant to agency law, but it may decline to impose such a sanction if Plaintiff played an insubstantial role in the sanctionable conduct. Such an interpretation accords with the Local Rules, which provide that "the imposition of sanctions for violation of a [L]ocal [R]ule is discretionary with the [C]ourt . . . . [and that] the [C]ourt may consider . . . whether other circumstances make the imposition of sanctions inappropriate." M.D.N.C. R. 83.4(b); see also Blue v. United States Dep't of Army, 914 F.2d 525, 538 (4th Cir. 1990) ("A district court's decision to impose sanctions is entitled to substantial deference. A district court is in the best position to review the factual circumstances and render an informed judgment as it is intimately involved with

the case, the litigants, and the attorneys on a daily basis." (internal citations, quotation marks, and alteration omitted)). In other words, a client's lack of involvement in the sanctionable conduct may constitute a circumstance rendering inappropriate sanctions on the client.

A review of the record does not support the view that Plaintiff played a culpable role in her attorney's violations of the Local Rules. As to the violation of Local Rule 7.2(a)(2), the decision to include in a brief the unsupported assertion that Defendant fabricated a story to discredit Plaintiff - like the "handling of discovery — was not the type of conduct in which clients would typically participate," Sartin, 756 F.3d at 266-67; see also Rentz, 556 F.3d at 397-99 (affirming district court's decision to sanction attorneys and not client for inclusion of unsupported statement of fact in memorandum opposing summary judgment, despite client's active participation in litigation). In the absence of evidence that Plaintiff encouraged her counsel to include that statement, said violation reflects a lapse in professional judgment by an attorney not easily attributable to a client, particularly one like Plaintiff without prior experience as a party to litigation (see Docket Entry 26-3 at 3).

Similarly, the record does not establish that Plaintiff encouraged her attorney to behave in a rude and abusive manner during the deposition on October 20, 2011, in violation of Local

Rule 26.1(b)(1). Although, as noted on the record at the show cause hearing, Plaintiff engaged in obstreperous conduct during her deposition on October 19, 2010, she lacked any prior experience giving a deposition (id.) and, further, her counsel appeared to encourage the evasions (see, e.g., Docket Entry 26-6 at 69 ("[PLAINTIFF'S COUNSEL]: Maybe if you won't be quite as assertive and argumentative and angry when [Plaintiff] says something and challenge her so much about it, maybe it will be a little easier for her to talk about her situation.")). Finally, Plaintiff's behavior at her deposition did not cause her attorney to behave in a rude and sarcastic manner. See Warner v. DSM Pharma Chems. N. Am., Inc., Nos. 1:07CV302, 1:07CV312, 2009 WL 1347162, at *5 (W.D. Mich. May 13, 2009) (unpublished) ("[A]ttorneys are expected to stand back from the heat of battle and to make dispassionate decisions."), aff'd, 452 F. App'x 677 (6th Cir. 2011); Johnson v. TCB Constr. Co., Inc., No. 2:05CV370(DCB)(JMR), 2007 WL 37769, at *2 (S.D. Miss. Jan. 4, 2007) (unpublished) ("[A]ttorneys are expected to keep in check their own behavior to ensure that they are conducting themselves in a manner that would maintain the honor of the legal profession and our system of justice.").

In sum, taking account of all the relevant considerations, the Court should not impose any sanction against Plaintiff individually.

C.   Amount of Monetary Sanction against Plaintiff's Counsel

Defendant's Supplemental Affidavit details expenses totaling $23,163.09. (Docket Entry 57-1 at 3.) Defendant reportedly incurred these expenses in connection with the deposition it could not complete on October 20, 2010, the rescheduled deposition on November 9-10, 2010, and the show cause process. (Docket Entry 57 at 2-5.) In response, Plaintiff's counsel objects to a number of Defendant's claimed expenses as not resulting from the misconduct at issue and challenges other claimed expenses as unreasonable and excessive. (See Docket Entry 58 at 2, 5-8.)

First, Plaintiff's counsel contests Defendant's inclusion of expenses associated with the deposition of Plaintiff that occurred on October 19, 2010, prior to the misconduct of Plaintiff's counsel at the deposition on the following day. (Id. at 2.) Similarly, Plaintiff's counsel objects to various incidental expenses. (Id.) Ultimately, any expenses incurred on October 19-20, 2010, did not arise from the behavior of Plaintiff's counsel, because Defendant would have incurred similar expenses had the depositions proceeded properly. As a result, the expenses for the additional days of depositions in November - which the misconduct of Plaintiff's counsel actually necessitated - would reflect a more appropriate sanction. Therefore, the Court should exclude all expenses for the depositions on October 19-20, 2010 (totaling $6,238.59), leaving a sanction amount of $16,924.50.

-12-

Plaintiff's counsel, however, also challenges the inclusion of any expenses for the depositions of November 9-10, 2010, because "it seems that hardly any of those costs should be considered to be associated with or caused by the matters which are the subject of the Show Cause Order." (Id. at 5.) In objecting in this fashion, Plaintiff's counsel seeks to re-litigate issues adequately addressed at the show cause hearing, including by attempting to assign blame to defense counsel for Plaintiff's counsel's own misbehavior. (See id.) Having already considered such arguments on the record at the show cause hearing (see Docket Entry dated July 14, 2011), the undersigned Magistrate Judge declines to revisit them. Simply put, the Court should not order any reduction in expenses claimed for the depositions on November 9-10, 2010.

Next, Plaintiff's counsel opposes Defendant's inclusion of the costs of expedited deposition transcripts, claiming that "[e]xpedited transcripts are a luxury that [] Defendant chose." (Docket Entry 58 at 2; see also id. at 5 (noting that Defendant also claims expedited transcript fees for the depositions on November 9-10, 2010).) However, given the timing of those depositions in relation to the deadline for dispositive motions,[4]

---

[4] The discovery deadline actually fell on October 17, 2010 (see Docket Entry 18 at 1), with dispositive motions due 30 days later, see Fed. R. Civ. P. 56(b); M.D.N.C. R. 56.1(b). The Parties apparently conducted depositions beyond the discovery deadline by agreement due to various scheduling conflicts. (See Docket Entry 19 at 6-10; Docket Entry 21-1 at 1.)

-13-

Defendant's election to obtain expedited transcripts appears reasonable and the Court should not order any reduction of expenses in that regard. See Ford v. Zalco Realty, Inc., 708 F. Supp. 2d 558, 562 (E.D. Va. 2010) (allowing inclusion of costs for expedited transcripts in civil rights expense award when deposition occurred within one month of filing of summary judgment brief).

As a final matter, Plaintiff's counsel generally objects to the expenses claimed by Defendant as "exceed[ing] the minimum amount reasonably calculated to deter the conduct that is the subject of the Show Cause Order, . . . disproportionate to the severity of the violation asserted, and [] not justified based on history and experience." (Docket Entry 58 at 7.) In support of that argument, Plaintiff cites to a Fourth Circuit case for the proposition that a district court considering the appropriate Rule 11 sanction must evaluate several factors (see id. at 7-8): "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation," In re Kunstler, 914 F.2d 505, 523 (4th Cir. 1990). In that case, the Fourth Circuit reversed sanctions against three attorneys totaling $122,834.28, in large part because the district court did not afford the sanctioned individuals the opportunity to challenge the propriety of sanctions, as well as the sanction amount. Id. at 523-34. In contrast, this Court has provided Plaintiff's counsel adequate

opportunities to challenge the appropriateness of sanctions through briefing and the show cause hearing, as well as the opportunity to challenge the amount of any sanction.

Further, although Plaintiff's counsel asserts in a conclusory fashion that "a sanction of the magnitude sought would tend to chill the prospect of similar plaintiffs being able to obtain representation and effectively pursue claims of the type involved" (Docket Entry 58 at 8), the recommended sanction, in fact, would serve the purpose of addressing and deterring particular forms of misconduct without regard to the nature of any particular type of litigation. Plaintiff's counsel has identified no basis on which the Court could conclude that a sanction for rude and abusive behavior would have any chilling effect on any appropriate litigation. (See id. at 7-8.) To the extent Plaintiff's counsel contends "that special treatment of sanctions should be given to attorneys who handle unpopular civil rights [or employment discrimination] claims, . . . [the Court should] reject this claim out of hand. All attorneys are to be held to the same standards of conduct, no matter who their clients are." Oliveri v. Thompson, 803 F.2d 1265, 1280 (2d Cir. 1986).

Moreover, Plaintiff's counsel has offered no support for the contention that the sum involved represents an excessive amount in proportion to the severity of the violations (see Docket Entry 58 at 7-8) and a review of sanctions imposed under similar

-15-

circumstances confirms the reasonableness of the recommended sanction, see, e.g., In re First City Bancorporation of Tex., Inc., 282 F.3d 864, 865 (5th Cir. 2002) (affirming imposition of $25,000 sanction against attorney where "[h]is attitude and remarks . . . were - to understate his conduct - obnoxious"); GMAC Bank v. HFTC Corp., 252 F.R.D. 253, 254, 257, 265 (E.D. Pa. 2008) (denying motion for reconsideration as to sanctions totaling $29,322.61 imposed against attorney and client for client's abusive behavior during deposition). In addition, Plaintiff's counsel apparently ignores the fact that the recommended sanction shifts only expenses related to his deposition misconduct and thus does not include any additional consequence for his unsupported statement of fact in Plaintiff's brief opposing summary judgment. (See Docket Entry 58 at 5-8.) Finally, the misconduct by Plaintiff's counsel merits a substantial sanction because, for our court systems to function appropriately, litigants and their counsel must behave civilly. See, e.g., Huggins v. Coatesville Area Sch. Dist., Civ. A. No. 07-4917, 2009 WL 2973044, at *3 (E.D. Pa. Sept. 16, 2009) (unpublished) ("Treating an adversary with advertent discourtesy, let alone calumny or derision, rends the fabric of the law."); Freeman v. Schointuck, 192 F.R.D. 187, 189 (D. Md. 2000) ("[S]ystemic and deliberate abuses such as displayed by [the] [d]efendants' counsel during [the] deposition cannot go unsanctioned as they are destructive of the very fabric which holds

together the process of pretrial discovery - cooperative exchange of information without the need for constant court intervention.").

Given the pertinent circumstances, including the continued failure of Plaintiff's counsel to accept full responsibility for his misconduct, expense-shifting in the amount of $16,924.50 represents a reasonable and proportional sanction.

### III. CONCLUSION

The established violations of Local Rules 7.2(a)(2) and 26.1(b)(1) warrant sanctions.  However, given the lack of evidence of Plaintiff's direct culpability for such misconduct, the Court should assess a sanction against Plaintiff's counsel only.  Accordingly, as provided by Local Rule 83.4(a)(4), the Court should order Plaintiff's counsel to pay certain of Defendant's expenses to address the violations.

**IT IS THEREFORE RECOMMENDED** that, pursuant to Local Rule 83.4(a)(4), the Court order Plaintiff's counsel, Bruce M. Simpson of James, McElroy & Diehl, P.A., to pay Defendant $16,924.50 as a sanction for violating Local Rules 7.2(a)(2) and 26.1(b)(1).

                                      /s/ L. Patrick Auld
                                          **L. Patrick Auld**
                            **United States Magistrate Judge**

October 8, 2014